III

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
William Leon Thomas,       
Appellant.
 
 
 

Appeal From Charleston County
Jackson V. Gregory, Circuit Court Judge

Unpublished Opinion No. 2003-UP-091
Submitted November 20, 2002  Filed 
 January 30, 2003

AFFIRMED

 
 
 
Assistant Appellate Defender Robert M. Dudek, of Columbia, 
 for appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, 
 Senior Assistant Attorney General William Edgar Salter, III, all of Columbia; 
 and Solicitor Ralph E. Hoisington, of N. Charleston, for respondent.
 
 
 

PER CURIAM:  William Leon Thomas was convicted 
 of murder, burglary in the first degree, and armed robbery.  The judge sentenced 
 Thomas to thirty years imprisonment on each charge, with the sentences to run 
 concurrently.  Thomas appeals, arguing the trial court erred by: (1) failing 
 to grant a motion for a directed verdict on the murder charge because there 
 was no evidence Thomas was armed or planned to harm anyone when the men set 
 out to buy marijuana; (2) allowing a witness to testify concerning Williams 
 statement of a crime spree in which Thomas participated; and (3) permitting 
 the solicitor to amend the armed robbery indictment to list a handgun as the 
 deadly weapon used.
FACTUAL/PROCEDURAL HISTORY
Shortly after midnight on October 14, 
 1999, Thomas, Mike Hinton,  Gerald Roper, Elijah White, and Thomas Williams 
 left an apartment to purchase marijuana.  While traveling to a house where one 
 of the men had previously purchased marijuana, the five men discussed robbing 
 the house.  Upon arriving at the house, White exited the vehicle and knocked 
 on the door.  Thomas, Roper, and Williams then exited the vehicle.  Roper and 
 Williams were armed with guns.  Thomas, Roper, and Williams rushed the house, 
 with Williams busting in the front door.  Roper walked into a back bedroom, 
 while Williams and Thomas remained in the front room. In the bedroom, Roper 
 robbed a victim of $150 and a pair of pants.  The victim and his girlfriend 
 escaped out the window of the bedroom. In the front room, Williams shot a woman 
 three times.  Back in the vehicle, Williams bragged that he had shot an old 
 woman in the face in the front room.  The woman later died from the gun shot 
 wounds. 
After purchasing cocaine at another location, 
 the five men went to a second apartment.  At this apartment, Williams demonstrated 
 how he shot the woman at the house that the men robbed.  During Williams retelling 
 of the nights events, Thomas laughed and made hand gestures.  Williams committed 
 suicide later that morning. 
Thomas was indicted for murder, assault 
 with intent to kill, burglary in the first degree, and armed robbery.  At the 
 conclusion of the States case at trial, the solicitor nolle prossed 
 the charge of assault with intent to kill.  The jury convicted Thomas of the 
 remaining charges.  Thomas appeals.
I. Motion for a Directed Verdict
Thomas argues the trial court erred by failing 
 to grant a motion for a directed verdict on the murder charge because there 
 was no evidence Thomas was armed or planned to harm anyone when the men set 
 out to buy marijuana.
STANDARD OF REVIEW

In reviewing the denial of a motion for a directed verdict, 
 the evidence must be viewed in the light most favorable to the State, and if 
 there is any direct evidence or any substantial circumstantial evidence reasonably 
 tending to prove the guilt of the accused, an appellate court must find that 
 the case was properly submitted to the jury.  In ruling on a motion for a directed 
 verdict, the trial court is concerned with the existence of evidence, not its 
 weight.  

State v. Kelsey, 331 S.C. 50, 62, 502 S.E.2d 
 63, 69 (1998) (internal citations omitted).
DISCUSSION
Under the hand of one, the hand of all theory, 
 one who joins with another to accomplish an illegal purpose is liable criminally 
 for everything done by his confederate incidental to the execution of the common 
 design and purpose. State v. Langley, 334 S.C. 643, 648, 515 S.E.2d 
 98, 101 (1999).  
Specifically as to murder, [w]hen two or more 
 combine together to commit a robbery and, during the robbery, a homicide is 
 committed as a natural and probable consequence, all present and participating 
 in the robbery are as guilty of the killing as the one committing the homicide. 
 State v. Avery, 333 S.C. 284, 294, 509 S.E.2d 476, 481 (1998).  
In the light most favorable to the State, Thomas was 
 one of five men who planned an armed robbery while en route to the location 
 of the crime.  He actively participated in the armed robbery, as he rushed the 
 house accompanied by two armed men.  Roper committed an armed robbery in the 
 back bedroom of the house by threatening a victim with his gun and then taking 
 $150 from the victim.  Thomas was present in the front room while Williams shot 
 a woman to death.  
Because the testimony provided direct evidence 
 as well as substantial circumstantial evidence that Thomas participated in a 
 robbery that resulted in a murder, the trial court did not abuse its discretion 
 in denying the motion for a directed verdict on the murder charge. See 
 id. (holding the trial court properly denied appellants motion for a 
 directed verdict on the murder charge when appellant planned and participated 
 in the armed robbery where the homicide occurred).
II. Testimony by Witness
Thomas argues the trial court erred by allowing 
 a witness to testify concerning Williams statement of a crime spree in which 
 Thomas participated.
STANDARD OF REVIEW
A trial courts determination of whether 
 a statement is admissible as a declaration against penal interest will not be 
 disturbed absent an abuse of discretion.  State v. Kinloch, 338 S.C. 
 385, 388, 526 S.E.2d 705, 706 (2000).
DISCUSSION
 Rule 804(b)(3), SCRE, provides an exception 
 to the hearsay rule when a declarant is unavailable as a witness and the statement 
 at issue would subject the declarant to criminal liability.  A self-inculpatory 
 statement of a declarant allowed into evidence under Rule 804(b)(3), SCRE, may 
 be used to inculpate an accomplice when combined with other independent evidence. 
 See State v. Fuller, 337 S.C. 236, 245, 523 S.E.2d 168, 172 (1999) 
 ([A]n accomplices self-inculpatory statement combined with other independent 
 evidence can inculpate a criminal defendant.); Williamson v. United States, 
 512 U.S. 594, 603 (1994) (Even the confessions of arrested accomplices may 
 be admissible [under Rule 804(b)(3)] if they are truly self-inculpatory.).
A person who was present in the apartment 
 (Witness) testified about the events that took place in the apartment on the 
 night in question.  She stated Williams spoke of a shooting spree that included 
 killing the woman during the robbery and shooting two men at a nightclub. [1]   According to Witness, Williams gave details of how the woman 
 was killed. 
Thomas attorney objected to the admission 
 of this evidence, claiming it to be classic hearsay.  The trial court admitted 
 the evidence by finding the testimony fell into two hearsay exceptions, unavailable 
 declarant and excited utterance. [2] 
The declarant, Williams, was unavailable 
 to testify because he killed himself less than twenty-four hours after the events 
 for which Thomas was on trial. See Rule 804(a)(4), SCRE (stating a witness 
 is unavailable if he is dead). The statements at issue directly inculpated Williams, 
 as his statements described how he killed a woman and explained his involvement 
 in a crime spree. See Rule 804(b)(3), SCRE (defining a statement against 
 interest as one that at the time of its making . . . so far tended to subject 
 the declarant to . . . criminal liability . . . that a reasonable person in 
 the declarants position would not have made the statement unless believing 
 it to be true).
The State also produced independent evidence 
 of Thomas involvement in the armed robbery and murder.  Two witnesses testified 
 that Thomas discussed the plan to rob the house, participated in rushing the 
 house, and stayed in the house while the robbery and murder occurred. 
Furthermore, Thomas cannot show prejudice 
 resulting from Witness  testimony because two other witnesses testified, without 
 objection from defense counsel, that Williams talked about shooting the woman 
 while Williams was at the apartment. See State v. Griffin, 339 
 S.C. 74, 78, 528 S.E.2d 668, 670 (2000) (holding that appellant could not show 
 prejudice from the admission of hearsay evidence when the hearsay evidence was 
 merely cumulative to other properly admitted evidence).  Thus, the trial court 
 did not abuse its discretion by admitting Witness testimony concerning Williams 
 statements.
III. Amendment to Indictment
Thomas appeals, arguing the trial court erred by 
 permitting the solicitor to amend the armed robbery indictment to list a handgun 
 as the deadly weapon used.
DISCUSSION
A. Appropriateness of Amendment 
The subject matter jurisdiction of a court 
 is fundamental and can be raised at any time. Brown v. State, 343 S.C. 
 342, 346, 540 S.E.2d 846, 848-49 (2001).  An indictment is sufficient to convey 
 [subject matter] jurisdiction if it apprises the defendant of the elements of 
 the offense intended to be charged and informs the defendant of the circumstances 
 he must be prepared to defend. State v. Guthrie, 352 S.C. 103, ___, 
 572 S.E.2d 309, 312 (2002); see S.C. Const. art. I, § 11; S.C. Code Ann. 
 § 17-19-10 (1985).
The appropriate analysis for determining 
 whether an amendment to an indictment deprives the trial court of subject matter 
 jurisdiction is whether the amendment change[d] the nature of the offense charged. 
 S.C. Code Ann. § 17-19-100 (1985); see State v. Lynch, 344 S.C. 
 635, 640-41, 545 S.E.2d 511, 514 (2001) (holding the trial court did not have 
 jurisdiction after an amendment to an indictment where the substituted aggravating 
 circumstance was quite distinct from the original circumstance and required 
 proof that was materially different); Hope v. State, 328 S.C. 78, 80-81, 
 492 S.E.2d 76, 78 (1997) (holding the trial court was deprived of subject matter 
 jurisdiction when an indictment was amended from assault with intent to commit 
 third degree criminal sexual conduct to assault to commit first degree criminal 
 sexual conduct).
In the present case, Thomas original indictment 
 for armed robbery read:

That William Leon Thomas did in Charleston County, while 
 acting in concert with another, on or about October 14, 1999, feloniously take 
 from the person or presence of [victim], by means of force or intimidation, 
 and while armed with a deadly weapon, to wit: a knife, goods or monies of the 
 said [victim] being described as approximately One Hundred Fifty ($150.00) Dollars 
 in U.S. Currency and a pair of jeans.  This is in violation of Section 16-11-330 
 of the South Carolina Code of Laws (1976) as amended.

At trial, the trial court granted the solicitors request 
 that the word knife be amended to read handgun. 
In State v. Warren, this Court held an 
 indictment for second-degree criminal sexual conduct with a minor required factual 
 information on the victim, a term defined in the statute as a person between 
 the ages of fourteen and sixteen years old. 330 S.C. 584, 601-02, 500 S.E.2d 
 128, 137 (Ct. App. 1998).  According to this Court, the victim element of the 
 crime was met by the inclusion of the amended age, fourteen years old. Id.  
 This Court upheld the amended indictment, holding that the nature of the offense 
 of the charge had not changed because, [l]ike the original indictment, the 
 amended indictment set forth all of the statutory elements of the crime. Id.  

In the present case, use of a deadly weapon is 
 an element of the crime. See State v. Muldrow, 348 S.C. 264, 267, 
 559 S.E.2d 847, 849 (2002) ([T]he State may prove armed robbery by establishing 
 the commission of a robbery and . . . [the] additional element[] that the robber 
 was armed with a deadly weapon.)  The original indictment listed the deadly 
 weapon as a knife.  Prior to trial, the indictment was amended to state that 
 the deadly weapon was a handgun.  By analogy to Warren, the indictment 
 was properly amended because the element of the crime was a deadly weapon and 
 a gun is one of the deadly weapons mentioned in the statute, meaning that the 
 nature of the offense was not changed by the amendment. See S.C. Ann. 
 § 16-11-330 (Supp. 2001) (stating specifically that a pistol is a deadly weapon 
 as well as identifying a dirk and a razor as deadly weapons).  Thus, because 
 the nature of the offense did not change, the trial court was not divested of 
 subject matter jurisdiction by the amendment to the indictment.
B. Surprise by Amended Indictment
Even when an amendment to an indictment 
 does not divest the trial court of subject matter jurisdiction, the defendant 
 is nonetheless entitled, upon demand, to a continuance if he is surprised 
 by the amended indictment. S.C. Code Ann. § 17-19-100; see Lynch, 
 344 S.C. at 641 n.3, 545 S.E.2d at 514 n.3.
After the solicitor asked for an amendment 
 to the indictment, defense counsel objected because the amendment had not been 
 brought before a grand jury.  The trial court allowed the amendment.  Defense 
 counsel did not request a continuance in the case.  Because defense counsel 
 did not request the relief provided by section 17-19-100 at trial, he cannot 
 now seek relief from this Court. See State v. Rocheville, 310 
 S.C. 20, 24, 425 S.E.2d 32, 34 (1993) (holding an issue cannot be raised for 
 the first time on appeal, but must have been raised to and ruled upon by the 
 trial court to be preserved for appellate review); State v. Rice, 348 
 S.C. 417, 420, 559 S.E.2d 360, 361 (Ct. App. 2001) (holding that the only issues 
 that can be raised for the first time on appeal are those relating to subject 
 matter jurisdiction).
Furthermore, Thomas could not have been 
 surprised by change in the armed robbery indictment to read handgun because 
 two of the other indictments listed a gun as the weapon used. See Lynch, 
 344 S.C. at 641 n.3, 545 S.E.2d at 514 n.3 (holding that it is improper to look 
 at other indictments to determine subject matter jurisdiction when an indictment 
 has been amended because surprise is not the proper analysis for subject matter 
 jurisdiction but noting that surprise to the defendant is the proper analysis 
 if the trial court is found to have jurisdiction).  
CONCLUSION
For the foregoing reasons, the trial courts decision 
 is
AFFIRMED. [3] 
CONNOR, STILWELL, and HOWARD, JJ., concur.

 
 
 [1] Thomas was not charged with any crime associated with events at the 
 nightclub. There was testimony by Roper and Witness that the men went to a 
 nightclub between leaving the house that had been robbed and arriving at the 
 apartment. 

 
 
 [2] Because this Court may affirm on any ground appearing in the record, 
 the application of the excited-utterance exception is not discussed. See 
 Rule 220(c), SCACR.

 
 
 [3] Because oral argument would not aid the Court in resolving 
 any issue on appeal, we decide this case without oral argument pursuant to 
 Rule 215 and 220(b)(2), SCACR.